# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

RELDA ANN MOSS,                    :

               Plaintiff,          :          Case No. 3:08cv00393

 vs.                                :          District Judge Thomas M. Rose
                                    Magistrate Judge Sharon L. Ovington

FAIRBORN CITY SCHOOLS,             :

              Defendant.           :

---

## REPORT AND RECOMMENDATIONS[1]

---

This matter is before the Court upon Defendant Fairborn City School District Board of Education's[2] ["Fairborn"] separate motions to dismiss for failure to obey a discovery order (Doc. #98) and for failure to submit to deposition (Doc. #111); Defendant's motion to extend summary judgment deadline (Doc. #112); Plaintiff's second motion for reconsideration (Doc. #118); the parties' respective memoranda in opposition or reply to the aforesaid motions (Doc. ##100, 102, 116,

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Plaintiff's complaint named "Fairborn City Schools" as the sole Defendant (*see* Doc. #3), but because Defendant's filings repeatedly have indicated that it should be "properly identified as Fairborn City School District Board of Education" (*see, e.g.,* Doc. ##36, 38, 39, 43, 111, *etc.*), this Court hereafter will refer to Defendant by its preferred appellation.

120, 117, 121, 122, 123); and the record as a whole.

Because Defendant's motions to dismiss have the potential to be dispositive of the other motions, the Court first will address those dismissal motions by way of findings and recommendations, in accordance with Fed. R. Civ. P. 72(b).

## I.  PROCEDURAL BACKGROUND/THE PARTIES' CLAIMS

On September 29, 2008, Plaintiff Relda Ann Moss filed a *pro se* complaint in the Court of Common Pleas of Greene County, Ohio, alleging that Defendant Fairborn twice suspended her for three days without pay from her employment as a second grade teacher, "in retaliation for her prior filings of Equal Employment Opportunity (EEO) discrimination complaints." (Doc. #3 at 1).  Asserting that the state court had jurisdiction over her complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and Ohio Rev. Code § 4112.99 (*id.*), Plaintiff sought removal of any disciplinary references from her personnel file, compensatory damages for her lost pay, and "Two Million Dollars for the unwarranted, never-ending pain and . . . torment [that she] has endured due to Defendant's unlawful acts of retaliation." (*Id.* at 2).

Defendant removed the case to this Court on October 24, 2008, urging that original federal question jurisdiction exists "because Plaintiff, in her Complaint, has

2

attempted to assert claims premised upon federal law."  (Doc. #1 at 1).  This Court denied Plaintiff's motion to remand the action to state court.  (*See* Docs. ##12, 17).

On August 10, 2009, Defendant served its first set of interrogatories and requests for production of documents on Plaintiff.  (*See* Doc. # 36, Exhs. A, B).  Those discovery requests included, *inter alia*, requests for information and documents related to Plaintiff's past medical treatment.  (*See id.*, Exh. A at 6-7, Exh. B at 4-5).  Plaintiff responded by letters to Defendant's counsel and copied to this Court, objecting to the purported technical "impropriety" of all of Defendant's discovery requests.  (*See* Doc. ##30, 31).

On August 24, 2009, the Court issued a Preliminary Pretrial Order directing the parties to make "[r]equired disclosures under Fed. R. Civ. P. 26(a)(1)" by August 28, 2009, and specifically directing Plaintiff to provide to Defendant "a medical package, consisting of reports, medical bills, . . . hospital bills, hospital records, other bills and expenses, etc.," by October 1, 2009.  (Doc. #32).

Since that time, this action has been marked by Plaintiff's unrelenting resistance both to this Court's jurisdiction (*see, e.g.*, Doc. ##51, 57, 58, 64, 65, 66, 70, 71, 80, 81, 87, 90, 91, 93, 95, 97, 106) and to providing any meaningful discovery, through both repeated motions for protective order with no viable legal foundation (*see, e.g.*, Doc. ##34, 35, 37, 40, 41, 101) and equally baseless objections to Defendant's

3

properly propounded discovery requests.   (*See, e.g.*, Doc. ##44, 55).

As a result of Plaintiff refusal to cooperate voluntarily, Defendant sought to compel proper discovery responses.  (Doc. ##43, 54)  On March 5, 2010, this Court issued a 47-page Order in which it laboriously analyzed each of Plaintiff's discovery objections in detail, sustaining a few, but over-ruling most.  (Doc. #96)  The Court then directed Plaintiff to provide to Defendant, within 10 days, "initial disclosures, interrogatory answers, and documents or other items" responsive to Defendant's interrogatories and document requests sustained by the Court, plus "amended answers either admitting or denying the matters set forth in Defendant's Requests for Admission ##1-16." (Doc. #96 at 45-46).  The Order further directed Plaintiff to return signed HIPAA-compliant medical authorizations to Defendant in lieu of producing the medical records requested.  (*Id.* at 45).  Plaintiff was expressly "cautioned," however, that failure to comply could result in Defendant's Requests for Admission "being deemed admitted in accordance with Fed. R. Civ. P. 36(a)(6)" (*id.* at 46-47), as well as the imposition of other "sanctions in accordance with Fed. R. Civ. P. 37(b)(2)(A), including but not limited to having her claim for damages for 'unwarranted, never-ending pain and . . . torment' STRICKEN and/or having her action DISMISSED in whole or in part." (*Id.* at 45-46, 47).

On April 1, 2010, Defendant filed its now-pending motion to dismiss for

4

failure to obey a discovery order.  (Doc. #98).  According to Defendant, despite the March 5 Order directing Plaintiff to provide "fully responsive" amended responses to Defendant's proper discovery requests (*see* Doc. #96 at 46), "Plaintiff has again objected to almost all of [Defendant's] Interrogatories, Document Requests, and Requests for Admission, and in nearly every instance, she has provided evasive or unresponsive answers."  (Doc. #98 at 2).  For example, although the Court explicitly directed Plaintiff to file supplemental initial disclosures in compliance with Fed. R. Civ. P. 26(a)(1)(A)(iii)and (e)(1)(B) (*see* Doc. #96 at 46), Plaintiff provided nothing relating to "computation of damages," based on her position that such information is "not applicable" in this case.  (*See* Doc. #97 at 18).  In addition, the few "supplemental" responses that Plaintiff did provide consisted primarily of renewed objections to Defendant's interrogatories, document requests and requests for admission, still providing no useful substantive information.  (*Id.*).

Subsequently, on April 27, 2010, this Court issued an Order denying Plaintiff's motion for a protective order to bar or limit the scope of her deposition noticed by Defendant (after multiple attempts rebuffed by Plaintiff) for May 6, 2010.  (*See* Doc. ##101, 104 at Exh. C, 105).  The Court advised Plaintiff for at least the <u>third</u> time "that existing law does not justify her refusal to cooperate in discovery based on her position that Defendant's discovery requests regarding her mental and/or emotional

condition are irrelevant to her retaliation claim." (Doc. #105 at 2; *see also* Doc. ##48, 96). In light of Plaintiff's representation that she would not submit to being deposed as noticed unless "specifically ordered by the Court" (Doc. #101 at 2-3), the Court also specifically ordered Plaintiff "to appear for deposition"[3] and unequivocally "cautioned" her

> that failure to appear for and submit to her duly-noticed deposition (see Doc. #104, Exh. C) and to answer all questions properly propounded to her by Defendant's counsel will result in the imposition of sanctions in accordance with Fed. R. Civ. P. 37(d)(1)(A)(I), up to and including dismissal of her cause of action, in whole or in part. *See* Fed. R. Civ. P. 37(d)(2), (3); Fed. R. Civ. P. 37(b)(2).

(Doc. #105 at 2-3) (emphasis added). The Notice of "Videotaped Deposition" cited therein specifies that Plaintiff's deposition was to "be taken upon oral and video examination." (Doc. #104, Exh. C at 2) (emphasis added).

Despite the Court's clear admonition, Plaintiff apparently "appeared" for her noticed deposition, but did not submit to questioning. (*See* Doc. #114, transcript of Deposition of Relda Ann Moss). According to Defendant, Plaintiff arrived in the reception area of Defendant's counsel's office on May 6, 2010, together with two

---

[3]Significantly, the Court issued that direct Order despite the fact that the discovery rules expressly contemplate that a party may depose "any person, including a party, without leave of court." Fed. R. Civ. P. 30(a)(1) (emphasis added). Plaintiff's obstinance thus succeeded in evoking a Court Order reinforcing the necessity that she submit to deposition, even though no such order should have been necessary.

6

non-attorneys she termed her "assistants" (*see* Doc. #111 at 3 and Exh. C), but refused to allow her deposition to be recorded on video in accordance with the deposition notice (*see* Doc. #104, Exh. C at 2), or to be deposed outside the presence of Ms. Carolyn A. Dover, one of her designated "assistants," whom Defendant considered to be a potential witness.  (Doc. #111 at 4).  Plaintiff also declined even to enter the conference room, in the absence of the video camera, to place a statement on the record.  (*Id.* at 5).  The *ex parte* statement that Defendant's counsel nonetheless placed on the deposition record substantiates Defendant's version of events.  (*See* Doc. #114).

Based upon its alleged inability to secure Plaintiff's deposition testimony, Defendant filed a second motion to dismiss Plaintiff's action in its entirety, this time for her failure to submit to her duly-noticed deposition.  (Doc. #111).  Relying on Fed. R. Civ. P. 37(b)(2)(A)(v), (d)(3), and 41(b), Defendant urged in its first motion that Plaintiff's demonstrated unwillingness to cure the deficiencies in her responses to Defendant's written discovery requests warrants dismissal of her complaint in its entirety.  (Doc. #98 at 11-14).  In its second motion, Defendant cites the same procedural rules as justifying dismissal based on Plaintiff's failure to submit to deposition questioning, and also requests an award of reasonable expenses, including attorneys' fees, incurred as a result of Plaintiff's deposition that was

properly noticed but did not occur.  (Doc. #111 at 5-10).

In opposing Defendant's initial motion to dismiss, Plaintiff first summarily asserts that the motion is "frivolous" and "contrary to fact," but quickly reverts to arguing that this Court cannot dismiss her complaint because the Court "lacks legal jurisdiction" over this action.  (Doc. #100 at 1-3).  She then advances her oft-repeated complaint that by expecting her to provide discovery relating to her request for damages for "'unwarranted, never-ending pain and . . . torment" (*see* Doc. #3 at 2, ¶2), Defendant and the Court have attempted to force Plaintiff into converting her retaliation claim into one for "personal injury."  (*See, e.g.,* Doc. #100 at 3-4).  The rest of her opposing memorandum (*id.* at 4-8) is devoted to various arguments[4] that Plaintiff herself at one point summarizes as follows: "it . . was 'impossible' for Plaintiff not be in compliance with the Discovery Order" because "Plaintiff did not have any additional discovery information to provide to Defendant regarding her . . . 'one and only' claim of 'unlawful retaliation.'" (*Id.*).  In other words, Plaintiff refuses to provide discovery responses that exceed the scope of how <u>she</u> has chosen

---

[4]For example, Plaintiff argues that it is "impossible" for her to answer 10 of Defendant's requests for admissions because they contain the phrase "neither the Defendant nor any of its employees," which Plaintiff deems "a double negative."  (*See* Doc. #97 at 15-17).  In this regard, however, Plaintiff is simply wrong.  *See, e.g.,* Theodore M. Bernstein, *The Careful Writer* (1965) (noting that "double negative" constructions encompass improper usages such as "Don't give me no butter on my toast" (p. 149), whereas "neither . . . nor" is a proper usage in which "[c]orrelative conjunctions join equivalent elements" (p. 287)).  In any case, Plaintiff has not articulated a proper basis for objecting to a request for admission. *See* Fed. R. Civ. P. 36(a)(5).

to define her cause of action and her corresponding discovery obligations, in accordance with her lay understanding and interpretation of the law, notwithstanding this Court's decisions and Orders to the contrary.

As to Defendant's second motion to dismiss, Plaintiff leads with her wrongful removal argument, again maintaining that "this Court clearly lacks legal jurisdiction to adjudicate" this action.  (Doc. #116 at 1-2, 3, 7-8)  She then repeatedly contends that she "fully complied" with the Court's deposition order, which she says "only **ORDERED** Plaintiff to appear for the deposition," not "to submit to any deposition (via videograph or other means)."  (*Id.* at 3) (emphasis in original); (*see also id.* at 5).  Plaintiff goes on to deny that she refused to be deposed outside of Ms. Dover's presence, or that Ms. Dover's "potential witness" status was Defendant's "real reason" for excluding Ms. Dover from Plaintiff's proposed deposition.  (*Id.* at 5, 7).

In a blatant and tortured attempt to twist the Court's intent by parsing its language, Plaintiff also opines that the Court's warning about failure to comply "could very easily be construed to mean that if Plaintiff desires for the federal court to continue to adjudicate this Civil Action, she . . . must submit to the deposition."  (*Id.* at 3)  Revealingly, Plaintiff then reasons:

> Because Plaintiff does not desire that this Court continue to adjudicate this Civil Action, . . . it was proper for Plaintiff not to have submitted to the deposition.

(Doc. #116 at 3).

Finally, Plaintiff urges that she "is not legally responsible" for the costs associated with her non-occurring deposition, as "she informed Defendant prior to May 6, 2010 that she would not submit to a videographed deposition." (*Id.* at 6-7). She concludes that this Court should deny Defendant's second motion to dismiss, and "remand this [action] back to State Court from which it was improperly and defectively removed." (*Id.* at 7-8).

## II.    APPLICABLE LAW

### *Motions to Dismiss for Discovery Violations*

Although dismissal for failure to comply with the procedural rules or a court order is available under Fed. R. Civ. P. 41(b), a motion to dismiss for failure to provide discovery more properly is brought under Fed. R. Civ. P. 37(b). *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 210 (1958); *see also* 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2282 (3d ed. 2010) (the *Societe Internationale* decision "made it apparent that it is ordinarily inappropriate to look beyond the clearly delineated procedures of Rule 37 for the imposition of sanctions in the discovery context").

Under Rule 37, district courts have authority to impose a range of sanctions for failure to comply with discovery, up to and including dismissal of the action. *See, e.g.,* Fed. R. Civ. P. 37(b)(2); (c)(1), (2); (d)(3); *see also* 8B CHARLES ALAN WRIGHT,

ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2284 (3d ed. 2010) ("With a rule as flexible as Rule 37, inevitably a broad discretion must be given the trial judge with regard to sanctions."). Indeed, the United States Supreme Court has recognized that district courts must be given latitude to use severe sanctions as a general deterrent to conduct inconsistent with the intent of the discovery rules. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *see also* 8B WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2284 ("[T]he decision whether and how severely to sanction under Rule 37 rests securely within the district court's province.").

Significantly, under the express provisions of Rule 37, "an evasive or incomplete disclosure, answer, or response <u>must</u> <u>be</u> <u>treated</u> <u>as</u> <u>a</u> <u>failure</u> to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4) (emphasis added). In conjunction with the initial disclosure requirements of Fed. R. Civ. P. 26(a), Rule 37(c)(1) authorizes the "automatic" sanction of exclusion of undisclosed information, as well as other sanctions (including dismissal under Rule 37(b)(2)(C)), against a party who without justification fails to disclose the requisite information, so long as the failure to disclose is not harmless. *See Bullard v. Roadway Express*, 3 F. App'x 418, 421 (6th Cir. 2001). Similarly, Rule 37(d)(1) authorizes Rule 37(b) sanctions against a party who fails to appear for deposition or fails to respond to interrogatories, and Rule 37(d)(3)

11

provides that the court also "<u>must</u> require" such a party "to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure" (emphasis added). In addition, unwarranted failure to admit requests made under Rule 36 may result in such matters being deemed admitted, Fed. R. Civ. P. 36(a)(6), and also in the imposition of reasonable expenses and fees. Fed. R. Civ. P. 37(c)(2).

Under the law of this Circuit, dismissal is viewed as "the sanction of last resort," to be imposed "only if the court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault." *Beil v. Lakewood Engineering & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994); *see also Thomas v. Victoria's Secret Stores*, 141 F.R.D. 456, 459 (S.D. Ohio 1992) (Smith, J.) ("In this circuit, an order imposing dismissal may be entered only if the court makes an explicit finding that a party bears responsibility for failure to make discovery."). Beyond the reason for the discovery failure, however, four additional factors also weigh into whether a complaint should be dismissed for the plaintiff's failure to provide discovery. *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997) (quoting *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153-55 (6th Cir.1988)), *cert. denied*, 522 U.S. 868 (1997); *see also Beil, supra*. The four factors to be considered are: (1) whether the party's failure to cooperate was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the failure to

12

cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate would result in dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Harmon, Inc.*, 110 F.3d at 366-67; *see also Tisdale v. Federal Express Corp.*, 415 F.3d 516, 525 (6th Cir. 2005). Nevertheless, a district court does not abuse its discretion by dismissing a case "even though other sanctions might be workable," if the facts support dismissal. *Beil*, 15 F.3d at 552 (quoting *Regional Refuse Sys.*, 842 F.2d at 155).

## III.   ANALYSIS

### *Defendant's Motions to Dismiss*

An unfortunate yet foreseeable consequence of proceeding without counsel is the substantial risk that even an educated lay person attempting to represent him/herself will not understand certain legal nuances governing his/her cause of action. Here, despite her lack of legal training, Plaintiff steadfastly has refused to be dissuaded from her apparent conviction that her understanding of the law is superior to that of not only Defendant's counsel, but also the Magistrate and District Judges. Because she refuses to accept the Court's determinations that this matter was properly removed from state court (*see* Doc. ##12, 17) and that her damages claim is  subject to discovery (*see* Doc. ## 48, 96), Plaintiff also apparently has become convinced that the Court is "biased and prejudiced against her personally."

13

(Doc. #51 at 1[5]; *see also, e.g.,* Doc. ##57, 58, 64, 70, 71, 80, 81, 95[6]).

"While pro se litigants are afforded significant leeway . . . , those who proceed without counsel must still comply with the procedural rules that govern civil cases." *Frame v. Superior Fireplace*, 74 F. App'x. 601, 603 (6th Cir. 2003) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *McNeil v. United States,* 508 U.S. 106, 113 (1993)).  Given Plaintiff's *pro se* status, this Court has endeavored to exercise great forbearance even in the face of Plaintiff's repeated attacks on the Court's jurisdiction and objectivity. Ultimately, however, lack of professional representation does not excuse a party's repeated flouting of direct orders from the Court.  "[S]tatus as a pro se plaintiff does not allow [one] to abuse the judicial process, nor to adhere to legal positions that are not reasonable." *Williams v. Cochran*, 187 F.3d 639 [table], 1999 WL 164911, at *2 (6th Cir. 1999); *see also McNally v. MacDonald*, 932 F.2d 968 [table], 1991 WL 73247, at *3 (6th Cir. 1991) ("[O]ne acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.") (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)).

Individuals such as Plaintiff clearly are subject to sanctions.  Under Rule 37(b), for example, "[b]oth parties and counsel may be held personally liable for expenses,

---

[5]Plaintiff's Motion to Recuse Magistrate Judge Ovington.

[6]Plaintiff's third "Affidavit of Duress," suggesting that District Judge Rose, too, has exhibited "apparent bias and prejudice" against Plaintiff.

'including attorneys' fees,' caused by the failure to comply with discovery orders."
*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980) (superseded in part on other grounds by statute, *Antitrust Procedural Improvements Act of 1980, Pub. L. No. 96-349, §3, 94 Stat. 1154, 1156*, as recognized in *Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1357 n.7 (10th Cir. 1985)); *see also Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008) ("Our inherent power is not limited to sanctioning attorneys only; we can sanction a party as well."), *cert. denied*, ___ U.S. ___, 129 S. Ct. 1004 (2009); *Frame*, 74 F. App'x at 603 (affirming dismissal of *pro se* plaintiff's complaint where "[h]is action was not dismissed as the result of inartful pleading or any lack of legal training, but rather because he failed to adhere to a readily comprehended court deadline of which he was well aware."), *Williams*, 1999 WL 164911, at *2 (affirming imposition of Rule 37 sanctions against *pro se* plaintiff whose fallacious position regarding discovery of certain documents "was not arguable"). While the court should exercise such power "with restraint and discretion," a court nonetheless "should not shrink from exercising it when sanctions are justified by the circumstances." *Stalley*, 517 F.3d at 920.

In a case with many parallels to this one, the Sixth Circuit Court of Appeals affirmed the district court's dismissal of a sex discrimination action brought by a plaintiff who failed to produce copies of her medical records or a damage calculation

in response to initial disclosure requirements. *See Bullard*, 3 F. App'x at 421-222. Ms. Bullard also had made no personal injury claim, but the district court determined that her medical records nonetheless were "essential to the resolution of [her] dispute," given that they impacted her damages claim. *Id.* at 420. The district court there observed that "[a]lthough [the p]laintiff has the right to protect her privacy by refusing to disclose her medical records, [she] has no right to maintain a civil action in which she refuses to disclose relevant documents." *Id.* at 420-21. The appellate court agreed. Noting that five months had elapsed without initial discovery having been completed, *id.* at 422, and that prior court orders had "included [a] warning that failure to comply with the Rule 26(a) discovery requirements could result in dismissal," *id.* at 421, the Sixth Circuit found that dismissal was an appropriate sanction for the plaintiff's "continued unwillingness to provide the discovery," even though the district court had failed to discuss available lesser sanctions. *Id.* at 422.

Like the court in *Bullard*, this Court concludes that dismissal of this Plaintiff's entire action, too, is the sanction warranted by her repeated and unjustified refusal to cooperate in discovery, even after being ordered to do so by this Court. Like the district court in *Bullard*, this Court on more than one occasion explicitly warned Plaintiff of the potentially dire consequences of continued failure to comply with discovery – *i.e.*, that failure to provide adequate, substantive responses to Rule 26's

16

initial disclosure requirements and to Defendant's interrogatories, requests for production of documents and requests for admissions <u>could</u> result in "sanctions in accordance with Fed. R. Civ. P. 37(b)(2)(A), including but not limited to having her claim for damages for 'unwarranted, never-ending pain and . . . torment' STRICKEN and/or having her action DISMISSED in whole or in part" (Doc. #96 at 45-46, 47) (emphasis in original), and, even more unequivocally, "that failure to appear for and submit to her duly-noticed deposition (see Doc. #104, Exh. C) and to answer all questions properly propounded to her by Defendant's counsel <u>will</u> result in the imposition of sanctions in accordance with Fed. R. Civ. P. 37(d)(1)(A)(I), up to and including dismissal of her cause of action, in whole or in part." (Doc. #105 at 2-3) (emphasis added).

Moreover, while the plaintiff in *Bullard* reportedly resisted producing initial disclosures for five months before the district court resorted to dismissal, *see* 3 F. App'x at 422, Plaintiff in this action already has interposed delays totaling more than <u>10</u> months since the August 28, 2009 deadline that this Court originally set for Rule 26 initial disclosures, and more than eight months since the October 1, 2009 deadline established for production of Plaintiff's medical records. (*See* Doc. #32).  Because Plaintiff is not represented by counsel, and because Plaintiff possesses the ability (but refuses) to sign an authorization releasing her medical records to Defendant

17

and to produce any substantive information about the nature and amount of her claims, this Court finds that this discovery gridlock without question is the product of Plaintiff's own willful and deliberately obstructive conduct, attributable to Plaintiff's fault alone.

In addition, Defendant definitely has suffered prejudice as a result of Plaintiff's willful and unjustified refusal to cooperate in discovery, not only because justice has been delayed while Defendant was forced to undertake the considerable expense of opposing Plaintiff's multiple, legally unfounded motions for protective orders (as well as other baseless motions) and pursuing its own efforts to compel discovery being withheld by Plaintiff, but also because as of this date, more than a year and a half after Plaintiff's lawsuit was removed to this Court, Defendant still has received essentially no information from Plaintiff that can be used to prepare a defense to Plaintiff's claims. Having been denied substantive answers to interrogatories or the opportunity to take Plaintiff's deposition, Defendant cannot anticipate what witnesses may be needed to refute any disputed allegations that Plaintiff may make during her testimony. Having been denied access to Plaintiff's medical records, Defendant can offer no medical evidence to counter Plaintiff's demand for two million dollars for pain and suffering. This lack of insight into the evidence that Plaintiff plans to present also puts Defendant at a distinct

disadvantage in attempting to secure the services of an expert witness, or even in determining whether an expert witness may be necessary, and in attempting to prepare a motion for summary judgment. (*See* Doc. #112).

Finally, as to the fourth and final factor that this Court is to consider before imposing the "last resort" sanction of dismissal, we find that there is no lesser sanction available under these circumstances that is likely to dissuade Plaintiff from persisting in the contumacious conduct that she has displayed throughout this litigation, or that will serve as an effective deterrent against similar behavior by future litigants. Despite having been given multiple opportunities to rectify past insufficient responses, Plaintiff has shown no sign of being willing to deviate from her dogged insistence that she is not required to provide what Defendant has requested and the Court has ordered. Thus, there is no reason to believe that an additional Court order giving her yet another chance to comply would produce a different result.

Alternatively, were the Court merely to strike Plaintiff's claim for damages in the amount of two million dollars for pain and suffering (*see* Doc. #3 at 2) as a sanction for her failure to produce medical records relevant to that claim, the monetary value of Plaintiff's claim would be reduced to the six days of lost pay resulting from her two suspensions, but her underlying cause of action would

remain viable, and her demonstrated pattern of flouting this Court's authority could continue.  And prohibiting Plaintiff from testifying at trial as a sanction for her willful failure to submit to deposition – while putatively a "lesser" sanction – effectively would bar her from presenting any evidence to the trier of fact, and thus would be tantamount to allowing the parties' pretrial wrangling to continue while eviscerating Plaintiff's ability to present a case a trial.  Such a sanction therefore is not preferable to outright dismissal.

Perhaps most importantly, dismissal appears to be particularly warranted where, as here, Plaintiff's dilatory tactics and refusal to cooperate appear to have been part of a deliberate strategy intended to undermine this Court's jurisdiction and force the Court to remand the action to state court, where Plaintiff would prefer to proceed.  (Doc. #116 at 3) ("Because Plaintiff does not desire that this Court continue to adjudicate this Civil Action, . . . it was proper for Plaintiff not to have submitted to the deposition.").  For all of the foregoing reasons, the Court concludes that Defendant's motions to dismiss Plaintiff's complaint as a sanction for her multiple violations of the rules of discovery and this Court's discovery orders (Doc. ##98, 111) should be granted.

<u>Motion For Award of Expenses</u>

Defendant requests that the Court also sanction Plaintiff's failure to submit to deposition questioning by awarding Defendant its reasonable expenses, including

20

attorneys' fees, relative to arranging and preparing for that aborted deposition.  (*See* Doc. #111 at 1, 8-10, & Exhs. H-1, H-2 & H-3).  Although Fed. R. Civ. P. 37(d)(3) expressly provides that the court "<u>must</u> require the party failing to act" in accordance with a discovery order to pay such expenses (emphasis added), this Court hesitates to assess attorneys' fees in a sum certain without first giving Plaintiff fair notice and an opportunity to be heard on that subject. *See Roadway Express, Inc.*, 447 U.S. at 767.

Plaintiff's opportunity to be heard, however, need not be in the form a full evidentiary hearing, but rather can be satisfied by allowing Plaintiff an opportunity to file a memorandum arguing why Defendant should not be awarded attorneys' fees in the amount itemized in its supporting memorandum (*see* Doc. #111 at H-3) as being attributable to Plaintiff's refusal to submit to questioning at the time of her duly-noticed deposition.

Accordingly, at such time as the District Judge may order Plaintiff's complaint dismissed in accordance with this Report and Recommendation, Plaintiff also should be directed to show cause why Defendant's motion for attorney's fees should not be granted.  The parties' remaining motions may be denied as moot at that time.

**IT THEREFORE IS RECOMMENDED THAT:**

> 1)  Defendant's Motions to Dismiss for failure to obey a discovery order (Doc. #98) and for failure to submit to deposition (Doc. #111) be **GRANTED**;

21

2) Plaintiff's complaint (Doc. #3) be **DISMISSED WITH PREJUDICE** in its entirety, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v);

3) Defendant's Motion to Extend Summary Judgment Deadline (Doc. #112) and Plaintiff's second Motion for reconsideration (Doc. #118) be **DENIED** as moot; and

4) Plaintiff be **DIRECTED to SHOW CAUSE** why Defendant's Motion for Reasonable Expenses and Attorneys' Fees (Doc. #111) in the amount of $2,810.74 should not be granted.

June 24, 2010                                   __s/Sharon L. Ovington____
                                                        Sharon L. Ovington
                                                United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).

23